UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEAMATIC, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:16-CV-01431-JAR |
| JJF & C, LLC, et al., | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Request for Preliminary Injunction. (Doc. No. 2) The Court heard oral arguments on September 9, 2016. For the following reasons, the motion will be granted in part.

## BACKGROUND

The relevant facts, summarized herein, are set forth in Plaintiff's complaint. Plaintiff Steamatic, Inc. ("Steamatic") is a franchisor in the carpet cleaning, duct cleaning, and property restoration industry. Defendant JJF&C, LLC ("JJF&C") is a former franchisee of Steamatic. James Finn and Kevin Finn, additional defendants, are members of JJF&C. Steamatic and Defendants operated under a Franchise Agreement (the "Agreement") from April 18, 2005 for an initial term of ten years. Under the Franchise Agreement, Steamatic provided Defendants with certain proprietary equipment, manuals, and intellectual property to be used in furtherance of Defendants' carpet cleaning and restoration business, and which they agreed to return after the termination of the Agreement. Both parties agreed to a territory in which Defendants would have the right to operate exclusively. In other words, Steamatic agreed not to grant another franchise in this territory during the term of the Agreement. Moreover, Defendants' agreed to pay royalties and

fees to Steamatic. Pursuant to another provision in the Agreement, Defendants agreed to a covenant not to compete during the term of the Agreement and for two years after its termination in the exclusive territory provided for in the Agreement.

Although the parties dispute the exact timing of the termination of the Agreement, Steamatic alleges that it sent a notice of termination to Defendants on April 14, 2016 and subsequently terminated the Franchise Agreement on July 15, 2016 due to Defendants' defaults under the Agreement.[1] In its July 15, 2016 letter, Steamatic reminded Defendants of their obligations under the Franchise Agreement, including the return of Plaintiff's proprietary information and equipment, intellectual property, and Defendants' obligation under the restrictive covenant. Steamatic contends that despite the Agreement's termination, Defendants are currently violating its obligations under the Agreement. Steamatic asserts that Defendants have continued to operate a business that provides the same or substantially similar services as Steamatic after the termination of the Agreement and in violation of a restrictive covenant contained therein. Moreover, Steamatic asserts that Defendants have failed to return Steamatic's propriety and confidential information, including without limitation, its intellectual property, equipment, and trade secrets, in violation of the Agreement. Steamatic, for example, contends that Defendants have operated a website called www.steamaticstl.com that automatically directs visitors to their new business, St. Louis Cleaning and Restoration.[2]

**DISCUSSION**

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will

---

[1] On the other hand, Defendants allege that the July 15, 2016 letter served as mere notice of termination.
[2] Defendants emphasize that this website clearly states that it has no connection to Steamatic.

succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). "In balancing the equities no single factor is determinative." *Id.* These factors are also considered to determine the propriety of a temporary restraining order. *See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project,* 877 F.2d 707, 708 (8th Cir. 1989). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

    A. <u>Likelihood of Success on the Merits</u>

The Court notes that in their opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction, Defendants rely solely upon Missouri law. However, the Franchise Agreement clearly provides that the Agreement "shall be interpreted and governed under the laws of the state of Texas . . ." (Doc. No. 1-2, at ¶ 19.10) Plaintiff refers to the law of both states. The Court is satisfied under the law of either state that Steamatic is likely to succeed on the merits of its claim for breach of contract – restrictive covenant. (Doc. No. 1, at ¶ 67) Under Missouri law, for a restrictive covenant to be valid and enforceable, it must be reasonable as to time or space. *AEE-EMF, Inc. v. Passmore*, 906 S.W.2d 714, 719 (Mo. Ct. App. 1995). The rules applicable to enforcing non-compete agreements emanate from the purpose of such agreements, to protect a business entity from unfair competition by a former business associate without imposing unreasonable restraint on the former business associate. *Id.* at 719-20. Under Texas law, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. Tex. Bus. & Com. Code Ann. § 15.50(a).

The Court finds that the covenant not to compete contained in Article 8 of the parties'

Franchise Agreement is valid and enforceable. Here, the covenant not to compete at issue limits Defendants' ability to operate the same or substantially similar business for two years in twelve counties in the Eastern Missouri and Southern Illinois regions. The covenant not to compete was assented to by both parties, appears not to be unconscionable or overbroad in scope, and is reasonable in both duration and scope under Missouri or Texas law. *See AEE-EMF*, 906 S.W.2d at 719-20 (finding a non-compete agreement lasting five years and covering the continental United States to be reasonable); *see also Silvers, Asher, Sher & McLaren, M.D.s Neurology, P.C. v. Batchu*, 16 S.W.3d 340, 345-46 (Mo. Ct. App. 2000) (affirming the trial court's finding that a non-compete agreement of two years and a seventy-five-mile radius was enforceable).

Even though Defendants are no longer a Steamatic franchisee, they continue to use www.steamaticstl.com as a landing page. Defendants point out that the website makes clear that Defendants' new business, St. Louis Cleaning and Restoration, is not associated with Steamatic. However, www.steamaticstl.com automatically diverts visitors to the website of St. Louis Cleaning and Restoration after fifteen seconds. Furthermore, the website for Defendants' new business provides that the business is the "Same Company, Same Employees, Same Owners, Same Quality, Just a Different Name." Consequently, Defendants' new business, St. Louis Cleaning and Restoration, is in clear violation of the covenant not to compete contained in Article 8 of the Franchise Agreement, as it engages in the same or substantially similar activity that is covered in the Franchise Agreement. The Court also finds that Defendants' use of www.steamaticstl.com facilitates actions which violate the enforceable covenant not to compete. Consequently, Defendants' use of this website also violates the covenant not to compete in Article 8 of the Franchise Agreement.

B. <u>Irreparable Harm to Steamatic Absent an Injunction</u>

Irreparable harm occurs when a party has no adequate remedy at law, typically because its

injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The Court finds that here, where the irreparable harm to Steamatic is the violation of a binding covenant not to compete designed to protect its interests, its remedy at law is inadequate because the damages would be difficult, if not impossible, to measure. *Baker Electric Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994); *Systematic Business Services, Inc. v. Bratten*, 162 S.W.3d 41, 51 (Mo. Ct. App. 2005). For this reason, there is sufficient likelihood of irreparable harm to justify the imposition of injunctive relief.

C. Balance of Harms

In balancing the harm to the parties caused by the entry of the temporary restraining order, the Court is mindful of practical consequences of enjoining a business from operating. While the Court is sympathetic to Defendants' arguments concerning the ramifications of a TRO, the adequate remedy for Plaintiff here is injunctive relief. Additionally, the harm to Defendants, if enjoined at least until such time as the Court can hold a preliminary injunction hearing, can be satisfied by the payment of any monies that may be lost during the period of closure. Thus, the harm that Plaintiff has suffered, and will continue to suffer absent an injunction, outweighs any harm to Defendants if their actions competing with Plaintiff are enjoined.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Court will order that Plaintiff provide a surety bond in the amount of **$150,000.00**, which Plaintiff must post as security for the payment of such costs and damages (if any) as may be incurred or suffered by Defendants if they are found to have been wrongfully enjoined or restrained. In deciding upon this amount, the Court has considered the representations made by the parties during oral argument regarding Defendants' lost revenue and the time that will likely be required for the Court to hear and decide the motion for preliminary injunction. The Court has also considered in determining the bond an amount for Defendants' attorneys' fees, should they be recoverable.

D.  The Public Interest

Here, the balance of the equities favors granting Steamatic's motion for injunctive relief. It is in the public's interest to hold parties to its mutually bargained-for obligations, particularly those from which a party has benefited in the past.

Oral Agreement

During argument on Plaintiff's motion for injunctive relief, the parties presented disputed facts and arguments to the Court regarding the existence of an oral agreement under which the parties were apparently operating, and it appears to the Court that this issue requires discovery and additional briefing. The Court will defer making any determination on this issue at this time.

## **CONCLUSION**

In sum, the Court has considered the balance of the equities in light of the *Dataphase* factors and concludes that Plaintiff has met its burden of showing that a temporary restraining order should be issued.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Request for Preliminary Injunction [2] is **granted in part**. A separate Temporary Restraining Order will be filed this day.

**IT IS FURTHER ORDERED** that Plaintiff shall post a bond in the sum of **$150,000.00**, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the parties shall submit, **within three (3) days of this Order**, a proposed scheduling plan for disclosure.

Dated this 13th day of September, 2016.

                                                                              _____
                                                                              JOHN A. ROSS
                                                                              UNITED STATES DISTRICT JUDGE